Case number 101758, Michael Dikcis v. Nicor Gas Company. Members of the court, good morning. My name is Terry Buehler. I'm here on behalf of the plaintiff along with my co-counsel, Mr. Mike Moody, who's sitting at council table with me. I would like to reserve three minutes for rebuttal, please. May it please the court. We represent, Mr. Moody and I, Mr. Michael Dikcis, and Mr. Dikcis is a Nicor customer. Mr. Dikcis has filed suit against Nicor, complaining that in January, February, and March of 2008, Nicor failed to read his gas meter and instead billed him for estimated charges. Gas usage. In April, Nicor sent somebody out to his home. It took an actual reading from the meter, and then they billed him for all of the gas, the difference between the December reading and the April reading, which included April and the underestimated charges for the three prior months. The lawsuit's based on, first, the fact that Nicor substantially underestimated his use through the winter months, when I think it would be fair to assume that gas use is going to be higher, and compounded by the fact that the price of energy, of gas, went up dramatically from December through January, February, and March. So by the time he got to April, he was paying the higher April price for literally the use of gas in January, which should have been at the lower price. Based on these facts, Mr. Dikcis brought suit in the circuit court of Cook County, seeking damages for himself and all other similarly situated people. Everybody else who was a victim of Nicor's scheme. Mr. Dikcis brought a two-count complaint, the first count under the Illinois Public Utilities Act 5-201. This statute creates a cause of action against a public utility like Nicor for doing something that's prohibited by the Public Utilities Act. The Act does permit Nicor to bill on an estimated basis, but for one month only. They cannot do it two months in a row. And here, Nicor did it three months with the problems that flowed from that. The second count of the complaint is based on consumer fraud, and that alleges that Nicor acted both unfairly and deceptively by its conduct. And this is really the heart of the case, I would say to the panel. In April, Nicor had an opportunity to bill its customers falsely or fairly, and it chose to do it falsely. So the consumer fraud claim is based on Nicor acting deceptively and billing its customers based on a false rate for the gas because the price in January, as I said, was a lot lower than the price of April. But Nicor used the April price to inflate its profits, its revenue. The lower court dismissed the suit on the ground that the Illinois Commerce Commission has exclusive jurisdiction of the case because Mr. Dikcis' claims in the court's view were for reparations and not for damages. And this is the single most important issue before the court today. Is this a claim for reparations or is it a claim for damages? A claim for reparations falls within the ICC's exclusive jurisdiction, whereas a claim for damages can be brought in either the circuit court or before the ICC. Now, the parties have spent a great deal of time in their briefs arguing over whether is this a claim for a refund or is this a claim for damages, is it reparation or not? A claim for reparations in the cases is generally described as a claim whose essence is that the utility has charged too much for either its services or its goods. A claim for damages, on the other hand, flows from the wrongful acts of the utility in some form of a common law cause of action that's recognizable to all of us like fraud, negligent misrepresentation, breach of contract. Counsel, aren't you saying that the utility charged too much for its services? Absolutely, Your Honor. Absolutely. Then why isn't it a claim for reparations? Why doesn't it properly belong before the ICC? Because it was done deceptively, Your Honor. You can look at all of the cases cited. Are you saying it was done separately? Deceptively. Oh, deceptively. Right. That's the principal difference between the Thrasher case, which the lower court relied on, which my court relied on, which I've read so many times I can almost recite it. And what was critical in that case, Judge, was the Thrasher court saying there are no allegations of fraud in this complaint. And they did that in the context of distinguishing the case that the plaintiffs cited in that case where the courts, the appellate court, had determined that it was a claim for damages rather than reparations because it was based on a scheme to defraud. It's precisely what we have here. We have a deception. Where is the scheme? Judge, they charged gas in April. They charged for January gas in April at April prices. Isn't that a rate problem? I'm sorry? Isn't that a rate problem? I don't think so, Judge. There's no argument about the rate. The rate in January was the rate in January, and we don't complain about that. You're saying they applied the wrong rate. Overcharged in April and undercharged on the estimates. Right. And if they did that deceptively and for what purpose? What is the deception? What is the reason why they did it? To inflate revenue, Judge. They made a lot more money by charging the firm at 99 cents than they would have at 65 cents. So you say they intentionally charged the higher rate intending to increase their revenue. That's the scheme. Or are you saying that they intentionally undercharged for January, February, March, and then overcharged in April? I think that it is a fair inference. Obviously, we've taken no discovery, as you know. I think it would be a fair inference to assume that the estimates from NICOR for a longstanding customer ought to be pretty accurate based on the number of years that NICOR has been in the business. But assume for a moment with me that the estimate was a good-faith underestimate entirely by accident. Now you get to April. Firms are 99 cents apiece. In December, they were 65 cents apiece. There was nothing that would have prevented NICOR from prorating the overuse. My question, then, is why isn't it a rate issue? Because they chose not to do it, Judge. That's the deception. They said, here's your bill for April. If they charge me the wrong rate, that's within the exclusive jurisdiction of the Commerce Commission. The Act says so. But if they do it deceptively, it becomes a claim for damages, I believe. But you could make that on every rate case. You knew you were charging me 90 cents per therm, or whatever it is. You should have charged me 60 cents, and, therefore, it's not a rate case. It's an intentional tort case. I'm like, what? That's not what the Act says. Well, but that's what I believe that the cases have come down to. I would ask Your Honor to compare Gowdy, for example. What about Evergreen? I'm sorry? What about Evergreen? Didn't the utility know that those streetlights were out? I'm not sure there's any evidence. I don't recall the opinion whether they stated that it was or it wasn't. What I do recall was Evergreen relied almost entirely on Thrasher. And Thrasher, I suggest to the Court, turned on the proposition that there was no deception, there was no fraud, there was no common law cause of action in Thrasher. So I'm still trying to figure out how this rises to the level of deception. Is there some additional evidence to indicate, you know, that there was an intent to deceive here? There may well be, Judge. As a consumer, I'm not in a position as the attorney on behalf of the consumer. But this is your allegation, that there was deception. Absolutely there was, because by the time they got the April Bill, Judge. It was only by inference that we're supposed to conclude that that was intentional deception. Intentional or reckless? Either way it would rise to the level under the Consumer Fraud Act. I did not plead a fraud claim. There may well be a fraud claim here. There's, in my opinion, clearly a consumer fraud claim. Because they could have fixed the problem in April, Judge. There was no reason that they had to charge a higher price in April for January and February energy use. That was a decision that they made. Whether they made it deliberately, whether they made it negligently, doesn't matter. They had the power and the ability to fix it. They chose not to fix it. They charged a higher price in April when they didn't have to. I'm not sure I've got much else to say after that. I did have one question. Sure. Did you try to take this initially to the Commerce Commission or no? As the briefs point out, this case was filed twice. Once on behalf of Alan Dixis and it was dismissed on the grounds that were before you. There was a great deal of effort made to get the ICC interested in the case. They never expressed any interest in following up. The only evidence in the record on that that I can point to, Judge, is the letter that NICOR attached to its reply brief in support of its motion to dismiss in the lower court, before I had an opportunity to take discovery. What that letter says, and it was the subject of my reply brief in this court, is the ICC wrote NICOR and said, we've been getting all of these complaints about underestimated billings. It's higher in 2008 than it has been in the past. Would you please explain to us what you're doing? And at the time I got that letter, it was 18 months old. There was no response attached to it. I believe it's a fair assumption that there has been no response. There's been no follow-up. So this leads me to my final point, ladies and gentlemen. If you dismiss this case based on jurisdictional grounds, nobody's going to hold NICOR to account. Thank you, Counselor. You'll have some short rebuttal. Thank you. Kelly? Good morning. My name is Catherine Swift, and I represent NICOR Gas Company. The circuit court's dismissal of this case should be affirmed for two reasons. First, Michael Dixis says he was overcharged. Due to human error, NICOR charged his winter gas usage at the higher spring rate. Overcharges are themselves rates within the meaning of the Public Utilities Act, and rates are within the exclusive jurisdiction of the Illinois Commerce Commission, the ICC. Second, the overcharges here relate to how NICOR measured the quantity of the service it provided. Mr. Dixis says that NICOR underestimated his winter gas usage. It mismeasured that usage. Measurement claims like this are also within the exclusive jurisdiction of the ICC. Mr. Dixis seeks to avoid this outcome by calling his claim one for fraud and by alleging a violation under the Act. But this court in Thrasher and Evergreen Park has rejected both of those arguments. Finally, Mr. Dixis argues that even if his claim is within the exclusive jurisdiction of the ICC, that he should be excused for failing to bring his claim there first, because doing so would have been futile. He's wrong. This court has repeatedly rejected futility arguments in cases like this one, and in any event, there is no evidence to suggest that the ICC would not have heard his claim. Before I go on, Your Honors, I would like to respond specifically to a couple of the points that Mr. Dixis's attorney just made. First, one of the final points he made in response to Justice Lampkin's question, no, Mr. Dixis never filed a complaint before the ICC. And I'll address that again later in my argument. Second, Mr. Dixis's attorney says that this is not a reparations case because it was done deceptively, and that that's what makes it different between, that that's the difference between this case and Thrasher. But there's no scheme here. This was, this happened because of human error. And finally, in response to what Mr. Dixis's attorney said about the letter that was attached to NICOR's reply brief. Counsel, what's the evidence that this was human error and not deception? There's nothing in the record on this point, Your Honor. But when this happens, it's because a human being didn't go back and charge the earlier month's charges at the earlier month's rates. And when that happens, NICOR corrects the problem when it's alerted to the problem. Overcharges are rates within the meaning of the Public Utilities Act. The Act defines the word rate to include, quote, every individual or joint rate, fare, toll, charge, rental, or other compensation of any public utility, and any rule, regulation, charge, practice, or contract relating thereto. That's Section 3-116 of the Act. The Act defines the term rate very broadly. It includes not just the price per therm of gas, but also practices and charges relating thereto. This Court has repeatedly reinforced that the ICC's jurisdiction over rates is expansive. See, for example, Evergreen Park at page 813. Mr. Dixis argues to the contrary that the ICC's jurisdiction over rates is narrow. But, for example, in Bloom Township High School, this Court found that a rider, a utility tariff, was a rate under the Act, even though the tariff addressed more than just the price of electricity. That case was about whether ComEd was entitled to assess penalties against the customers, who were the plaintiffs in that case. And the Court found that that rider... Can I ask you a question? Because I'm having a little difficulty reading this. The estimated bills that were sent out in the complaint, it refers to three of them. Can you tell me the estimate of the therms, how it related to the amount of therms actually used for the same month in the prior year? I can't read it off the exhibit. You mean how the estimate, whether it was the same amount... Prior year. I don't know the answer to that question, Your Honor. You have the complaint that's there. I just can't read the copy that you gave me. I don't know that I'll be able to read it better than you will, Your Honor. It's Exhibit A of the complaint. I think it's in the left-hand margin. Almost there. I'm talking about A... 11 and 12. 11, 12. Yeah. 11 and 12. 11, 12.    11 and 12. 11, 12. And maybe... And 13. Yeah. There you go. Your Honor, I believe the copy that I have is going to be identical to yours. It looks like it says average daily perhaps usage, but I can't tell that last word. And then 2008, you know, I can't read it at all. I see the 2008 and the 2007, but I can't tell whether they're the same or not. Do you think that there's a difference of a circumstance where a utility estimates a month's usage based upon the usage in the prior year, assuming that the temperatures are the same as compared to a utility who estimates the usage at 50 percent of what it was the prior year intentionally? Do you think there's a difference there? Perhaps, but only based on, Your Honor's inclusion of the word intentionally. Yeah, clearly, intentionally. If they intentionally estimate it at 50 percent of what it was the prior year and then charge at some later date for the difference at a higher rate and they intentionally do that to increase their revenues, do you think that's a rate case?  Or do you think that's a fraud case? I think it might be, Your Honor, but I think it's not this case. Most hypotheticals aren't this case. So the question becomes, is that a rate case or a fraud case? It would depend very much on what the evidence showed with respect to the intentionality of the utility's actions, Your Honor. But if the utility estimates usage this month at equal to or almost equal to what it was a year ago at this time, then I suppose my question becomes if they charge at the later date, three months later, where's the scheme? I agree with you, Your Honor. There is no scheme in that set of facts. And I think it's possible, and I'm speculating a little bit. I apologize. I'm trying to get into the head of my opponents here, Your Honor. But I'm not sure that what they're saying is – or build the January usage at, just for simplicity's sake, $0.10 a therm in 2007, and they're billing it at $0.05 a therm in 2008. I think what they're saying, and perhaps I'm wrong, and opposing counsel can address this. I think it's reversed, but go ahead. I think what they're saying is you estimated it at a certain amount. You underestimated it. Therefore, you undercharge. Three months later, you made up the difference, but you made up the difference at more per therm than it should have been had it been per rate, I think is what their theory is. But I don't know that that has anything to do with the difference between the price per therm in 2007 and the price per therm in January 2007 and 2008. I'm trying to figure out when the scheme – what's the scheme? I think there's – I'm guessing, just from this dialogue back and forth, and certainly the Appalachian Palace, if you have an estimated bill for the three months, it's the fact that they estimated the bills for three months that indicates the scheme, because in the fourth month, they are able to do the higher rate. Exactly. It's the difference between the price for the estimated number of therms at whatever the rate was January, February, March, and the price in April. Yeah. Well, I'm trying to figure out what the scheme is. I'm in agreement with you, Justice, that there – I don't believe there is no scheme in this case. Returning to the case law on how this court has defined a rate, in the case of Scheffler v. Commonwealth Edison, this court found that the plaintiff's level of service claims were rates because requiring ComEd to change its level of service was the same as requiring it to change its rates, which is something that only the ICC is authorized to do. And I want to point out to the court that Scheffler is on appeal right now to the Illinois Supreme Court. There's tension between this court's ruling in Scheffler and the second district's decision in Deerfield v. ComEd. Both cases involved claims arising out of the same storm-related power outages in August of 2007. Unlike Scheffler, the Deerfield court held that it had jurisdiction over the claims, but then referred those claims to the ICC under the doctrine of primary jurisdiction. But to be clear, the circuit court's decision in Mr. Dixis's case does not go as far as the Scheffler decision. In Scheffler, the plaintiffs alleged consequential damages for food spoilage, water damage, repairs to furniture and other property. Those are the types of ordinary common-law damages that you might expect a court to address. Here, by contrast, Mr. Dixis makes no claims for consequential damages. He only seeks reparations for an overcharge. Scheffler was somewhat something of a difficult case, but even under Deerfield, Mr. Dixis's claims should be dismissed. This court has held squarely in Thrasher and Evergreen Park that reparations for overcharges are within the exclusive jurisdiction of the ICC, and Mr. Dixis's case is controlled by those decisions. Mr. Dixis's overcharge claim also relates to how NICOR measured the quantity of the services it provided, and measurement claims like this are also within the exclusive jurisdiction of the ICC. He complains about NICOR's estimates. Estimates are one way of measuring the quantity of service provided, and in this regard, this case is just like the cases in Thrasher and Evergreen Park. The plaintiffs in those cases complained that ComEd had overcharged for electricity by failing to take into account burned-out streetlight bulbs and street lamps that were no longer in service. And in response to Your Honor's question about the street lamps in Evergreen Park, ComEd did know that the street lamps were no longer in service, and it just wasn't going to refund money that the village had already paid. Let me ask another question. ComEd, NICOR estimated for three months in a row. Is that correct? That's correct, Your Honor. Is there any allegation that NICOR purposefully estimated three months in a row so they could charge greater amounts in the future? There is in plaintiff's complaint, yes, Your Honor. Where is it? That's what I said, I assume it's the allegation of fraud. That's the consumer fraud claim, Your Honor. The complaint is a little bit bare-bones on the facts supporting this count. Count two starts at A008, Your Honor, of the complaint. If I recall correctly, the only facts alleged in support of this claim in the complaint are that unlike NICOR, People's Gas has automated meters that read the meters without an actual person having to go to the residence and look at the meter, and that the fact that NICOR doesn't have those same automated meters shows that NICOR is. Where is that allegation? It's certainly not on page 8. I apologize, Your Honor. That may have come out for the first time in response to our motion to dismiss in the pleadings below. There's no allegation in here that they intentionally estimated when they could have read actually. I don't know that the word intentional is there, Your Honor, but a consumer fraud claim would certainly require something more than mere negligence. Mr. Gibson. You have two minutes. If Your Honors don't have any further questions, I'll go ahead and rest on my briefs. Thank you very much. All right. Thank you. Roberto. You have three minutes. The complaint alleges that... Keep your voice up. Okay. Thank you. The complaint alleges that the estimates were dramatically underestimated. I cannot say to this Court that it was deliberate. What I can say is that it's so far away from actual that it would support a finding at least of reckless. That would support a consumer fraud claim. In fact, counsel, NICOR, admitted before this Court moments ago that they made a mistake with Mr. Dix's bill and corrected it. All we'd like to do in the lawsuit is give them the opportunity to make it right for everybody else. I would say to the Court that before the Court dismisses this as a reparations claim, I would point to Gowdy, Flourney, Consumer Guild, and Sutherland, all cases involving claims against utilities, all cases that stayed in the Court because they were damage claims based on common law clauses of action. That's what we have here. I would ask that the Court reverse the dismissal on the lower court and remand it for further proceedings. Thank you for your time. Thank you, counsel. This matter will be taken under advisement. This Court will recess until 11 a.m.